IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DERROLD DAVIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) No.  04 C 0594 |
| v. | ) |
| | ) |
| LEE RYKER, Warden, Lawrence | ) HONORABLE DAVID H. COAR |
| Correctional Center, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM OPINION AND ORDER**

Petitioner Derrold Davis' motion to vacate his sentence pursuant to 28 U.S.C. § 2254 is before this Court.[1] For the following reasons, the motion is denied.

**I. FACTS**[2]

The statement of facts in this case as presented in the opinion of the Illinois Appellate Court is presumed correct for the purpose of federal habeas review. 28 U.S.C. §2254(e)(1); *Summer v. Mata*, 449 U.S. 539, 547, 101 S. Ct. 764, 769 (1981). A summary of the pertinent facts follow.

---

[1] Lee Ryker is the warden of the Lawrence Correctional Center, where Petitioner is currently incarcerated. Kenneth R. Briley was the Warden of the Stateville Correctional Center, where Petitioner was held at the time this petition was filed. The Court hereby amends the case caption accordingly.

[2] All facts are taken from the Illinois Appellate Court record in *People v. Davis*, 335 Ill. App. 3d 1 (Ill. App. Ct. 2002).

-1-

On July 7, 1998, at approximately 2:30a.m., Larion Jackson was fatally wounded by a gun shot to the head. At the time, he was sitting on the porch of 512 North Laramie in the city of Chicago, with five or six friends. After the shooting occurred, the police questioned Chris Jackson, the deceased's brother, who was at the scene of the shooting. Chris Jackson said that he saw two men at the gate, one with a shotgun and one with a handgun. He was able to see the face of the man with the handgun. He did not hear a car going down the street, and did not know whether Petitioner was there that night. He later identified Petitioner's twin brother, Jerrold, as the shooter.

On July 9, 1998, Detective James Gilger of the Chicago Police Department interviewed Jamal Williams. Williams is a member of the Traveling ViceLords gang, and Gilger had used Williams before for information. Williams testified that he witnessed the shooting, and saw Petitioner's twin brother, with one other person, shooting at people on the porch of 512 North Laramie. He testified that a white car then pulled up, and the two shooters got in the car. Petitioner was alleged to be driving the car. Williams identified Jerrold in a line-up, but did not identify Petitioner himself. Williams later retracted his testimony and line-up identification, claiming he did not witness the event, could not distinguish the brothers, and was coerced into signing a written statement at the police station.

In the morning of August 10, 1998, Petitioner went to the police station to complain about an unrelated shooting. Petitioner was arrested, and questioned about both the unrelated shooting and the July 7 shooting. At approximately 9:30 p.m., Detective Richard Maher and Detective Pallohusky spoke with Petitioner for about 15-20 minutes. Maher advised Petitioner of his *Miranda* rights before speaking with him. When first questioned about the shooting,

Petitioner denied involvement, claiming that he was with his brother, Jerrold, at his uncle's home. The next day, at approximately 6:00 p.m., Petitioner confessed to participating in the shooting during an interview with Gilger. Petitioner claims that Gilger was hostile towards him, shoved and punched him in the chest several times until he agreed to cooperate.

Gilger called Assistant State's Attorney Dan Groth. After midnight on August 12, 1998, Groth spoke with Gilger, and then Petitioner. Groth advised Petitioner of his *Miranda* rights, and Petitioner agreed to speak with Groth. According to Groth, after their conversation, Petitioner decided he wanted to give a handwritten statement. Groth prepared the statement as Petitioner provided the information, and the two reviewed it. Petitioner, Groth and Gilger signed each page of the statement. Petitioner claims that he signed the statement because he was afraid that Gilger would continue to beat him.

In the statement, Petitioner said that on July 7, 1998, he, Jerrold Davis, Reginald Wilberton, and a fourth person nicknamed "Boss" got in a car. There were guns wrapped in blankets in the backseat. Jerrold unwrapped a .357 revolver; Wilberton unwrapped a shotgun. Petitioner said that when he saw the guns, he knew they were going to shoot at the Undertaker ViceLords gang. Petitioner drove to Laramie and stopped the car about 1 ½ houses away from where some Undertakers were on a porch. Jerrold, Boss and Wilberton went out and fired at the people on the porch, and then ran back to the car. Petitioner then drove to an alley where they abandoned the car.

Forensic evidence and firearm comparisons showed seven cartridge casings and two fired bullets were recovered from the scene. They were all from a .45 caliber gun and were fired from

the same gun. A shotgun shell was found at the scene, and shotgun wadding was found under Larion's body.

Petitioner was tried by a jury in Cook County in 2000. Petitioner was found guilty of first degree murder, attempted first degree murder, and aggravated discharge of a firearm. The circuit court sentenced petitioner to the Illinois Department of Corrections for concurrent terms of twenty five years, ten years, and ten years, respectively. Petitioner was incarcerated at the Stateville Correctional Center, and transferred to the Lawrence Correctional Center in Joliet, Illinois on August 23, 2006.

Petitioner appealed his convictions and sentences to the Illinois Appellate Court, First District. On November 6, 2002, the Illinois Appellate Court affirmed petitioner's convictions and sentences. Petitioner then filed a petition for leave to appeal in the Illinois Supreme Court, asserting the following claims: (1) whether Petitioner's arrest was without probable cause in violation of the Fourth Amendment, (2) whether there was attenuation between Petitioner's unlawful arrest and the statement of confession, (3) whether the admission of gang testimony was fundamentally unfair, denying Petitioner of due process, (4) whether a police gang officer can provide expert opinion, and (5) whether the testimony of a sole witness who is an admitted liar and criminal was sufficient to convict beyond a reasonable doubt. The petition for leave to appeal was denied on February 5, 2003.

Petitioner filed the instant federal habeas petition on January 21, 2004, asserting the following claims: (a) petitioner was arrested without probable cause, in violation of his Fourth Amendment rights, (b) petitioner's confession should be suppressed because it was the product of an unlawful arrest, (c) petitioner's confession should be suppressed because it was obtained in

violation of *Miranda*, (d) petitioner's confession was involuntary as it was the product of police coercion, (e) petitioner was denied due process by the admission of gang evidence, (f) petitioner was denied due process by the admission of expert testimony concerning gang evidence when the witness was not qualified as an expert, (g) the State's evidence was insufficient to prove petitioner guilty beyond a reasonable doubt, (h) petitioner was denied due process by numerous incorrect evidentiary rulings, and (I) the prosecution made numerous prejudicial remarks at trial.

**II. STANDARD OF REVIEW**

28 U.S.C. §2254 empowers federal district courts to hear petitions for a writ of habeas corpus on behalf of a person in state custody on the ground that he or she is in custody in violation of the Constitution, treaties, or laws of the United States. 28 U.S.C. § 2254(a) (1996); *see Wainwright v. Sykes*, 433 U.S. 72, 77 (1977). A federal court may only consider the merits of a writ of habeas corpus after the petitioner has (1) exhausted all available state court remedies; and (2) first presented any federal claim in state court. *See* 28 U.S.C. §2254© (1996); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994).

A federal court will not grant relief on claims that have been decided on the merits by state courts unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996).

## III. ANALYSIS

### A. Exhaustion of State Court Remedies

The question of exhaustion "refers only to remedies still available at the time of the federal petition," such that an applicant for federal could still obtain relief if he sought it in the state system. *Engle v. Isaac*, 456 U.S. 107, 125-26 (U.S. 1982); *O'Sullivan v. Boerckel*, 526 U.S. 838, 851-52 (U.S. 1999). Under such circumstances, where state remedies are still available at the time of the federal petition, the federal court must generally abstain from intervening in the interest of comity. *Id*. In the present case, there is no argument as to exhaustion; Respondent has already conceded that petitioner has exhausted his state court remedies.

### B. Procedural Default

The procedural default doctrine ensures that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that "they give state courts a sufficient opportunity to decide those claims before doing so." *Id.* at 853. Procedural default occurs when a petitioner failed to present a federal constitutional claim fairly to the state courts to be decided before raising it in the federal habeas proceeding, *Spreitzer v. Schomig*, 219 F.3d 639, 644-45 (7th Cir. 2000); or when the state court rejected the claim on an independent and adequate state law ground, *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). When a petitioner has the opportunity to raise a claim before the state supreme court and fails to do so, his claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (U.S. 1999). A claim that is otherwise barred for procedural default will only be cognizable in federal habeas proceedings if the petitioner can show "cause for the procedural default and actual prejudice as a result of the alleged violation of federal law," or can "demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478 (U.S. 1986).

In his motion for leave to appeal to the state supreme court, Petitioner raises five claims: (1) whether Petitioner's arrest was without probable cause in violation of the Fourth Amendment, (2) whether there was attenuation between Petitioner's unlawful arrest and the statement of confession, (3) whether the admission of gang testimony was fundamentally unfair, denying Petitioner of due process, (4) whether a police gang officer can provide expert opinion, and (5) whether the testimony of a sole witness who is an admitted liar and criminal was sufficient to convict beyond a reasonable doubt. Under *Boerckel*, any habeas claims outside of these five are procedurally defaulted, unless Petitioner can show cause or prejudice.

The following are Petitioner's habeas claims that were not raised to the state supreme court in his motion for leave to appeal: (a) that the Petitioner's confession should be suppressed because it violated his Miranda rights, (b) that the Petitioner's confession should be suppressed as it was involuntary under police coercion, (c) that Petitioner was denied fair trial by numerous evidentiary rulings, and (d) that Petitioner was denied fair trial by the Prosecution's improper and repetitive statements.

Petitioner raises no argument for cause or prejudice in claims (a) and (b); these claims are procedurally defaulted. Even if these claims were to be addressed on the merits, the evidence does not support a finding for habeas relief. In claim (a), Petitioner argues that he was not read his *Miranda* rights until after his confession was written by the State's Attorney Groth. The state appellate court record contradicts this assertion. The Illinois Appellate Court record indicates that "after Groth advised Derrold of his rights and Derrold acknowledged he understood them,

Derrold agreed to speak with Groth...After their conversation, Groth asked Derrold if he wanted the conversation memorialized. Derrold said he wanted to give a handwritten statement." *People v. Davis*, 335 Ill. App. 3d 1, 11 (Ill. App. Ct. 2002). The facts do not support habeas relief. In claim (b), Petitioner contends that his confession was invalid because it was given under police coercion. On this issue, the Illinois Appellate Court stated, "Derrold offered no evidence of coercion during the hearing on his motion to suppress the confession. Nor did he ask the trial court to reconsider its ruling denying the motion to suppress...we have before us the unrebutted testimony of State witnesses that there was no coercion. We also have the fact that Derrold was in custody for about 36 hours before his first confession." *People v. Davis*, 335 Ill. App. 3d 1, 15 (Ill. App. Ct. 2002). Although the Illinois Appellate Court found the lengthy detention troubling, it did not consider that the lengthy detention, standing alone, was sufficient to constitute coercion. The Supreme Court has found confession invalid due to police coercion when a 19-year old defendant with subnormal intelligence was "interrogated intermittently by police without counsel or his family for four days, was deprived of food, and was hospitalized." *Reck v. Pate*, 367 U.S. 433 (U.S. 1961). The Supreme Court reasoned that, "The question in each case is whether a defendant's will was overborne at the time he confessed. If so, the confession cannot be deemed the product of a rational intellect and a free will." *Id.* The facts of the instant case do not arise to the same coercive level as that of *Reck*. Petitioner was held for less than 4 days, he was not deprived of food, and he was not hospitalized. There is no evidence to indicate that Petitioner's will was overborne. Given these differences, the state appellate court's ruling that the sole fact of being held for 36 hours does not amount to coercion is reasonable and consistent with the Supreme Court's rulings.

In claim (c), Petitioner suggests that the stated 22 evidentiary rulings were made in error, and constitutes prejudice. To show prejudice, Petitioner must demonstrate there was significant probability that the result would have been different had the alleged error not been made. *Strickler v. Greene*, 527 U.S. 263 (1999). This court finds no prejudice in allowing the prosecution to state in the opening that innocent people were shot in a war over drug territory, and allowing the prosecutor to make references to "war" and"gangbangers." Petitioner stated himself that his gang was "at war" with another gang. *People v. Davis*, 335 Ill. App. 3d 1, 16 (Ill. App. Ct. 2002). Allowing similar language from the prosecution was not prejudicial. This court finds no prejudice in the trial court's decision to allow, disallow or restrict the testimonies of Chris Jackson, Jamal Williams, Dr. Jones, Merle Shearer, Alexander Young, Villetta Billingsley, Detective Kernan, Detective Gilger, Detective Maher, or Petitioner himself. While Petitioner may disagree with the trial court's rulings, there is no showing that there exists a significant probability that the result would have been different had the alleged error not been made, especially in light of Petitioner's confession. For the same reason, this court finds no prejudice in the trial court's denial of Petitioner's motion for directed verdict and motion for mistrial. Similarly, this court finds no prejudice in the trial court's jury instructions. Claim (c) is procedurally defaulted.

Finally, Petitioner claims that he was denied a fair trial when the prosecutor made numerous prejudicial remarks, such as questioning defense's credibility or calling a defendant a "liar." In light of the other evidence presented, such as the Petitioner's confession, the remarks simply do not rise to the level where it would have prejudiced the outcome of the case. Claim (d) is procedurally defaulted.

**C. Non-Cognizable Claims**

    I. Arrest and Confession

Petitioner seeks habeas relief on the ground that he was arrested without probable cause in violation of the Fourth Amendment, and that his confession should be suppressed because it was obtained from the illegal arrest. The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (U.S. 1976). The Court reasoned that it is inappropriate to use the exclusionary rule as the basis of collateral relief because it would not appreciably augment the deterrence of improper police conduct, which is the underlying purpose of the exclusionary rule. *Id.* at 493-95. Thus, the Fourth Amendment issues of illegal arrest and suppression of confession evidence are to be left to the state courts. Even if the state courts had not handled the Fourth Amendment issue correctly, if the petitioner was provided an opportunity for full and fair litigation in state courts, "a Fourth Amendment issue does not support a writ of habeas corpus." *Hampton v. Wyant*, 296 F.3d 560, 563 (7th Cir. 2002).

An accused receives a full and fair opportunity to litigate if (1) he has clearly informed the state of the factual basis for the claim and he has argued that those facts constitute a violation of his fourth amendment rights, (2) the state court has carefully and thoroughly analyzed the facts, and (3) the state court has applied the proper constitutional case law to the facts. *Hampton* at 563. The record indicates that these issues were properly presented before the trial, appellate and supreme courts of the state. The appellate court issued its ruling, and the state supreme court

denied petitioner's motion for leave to appeal. Thus, because the issues of arrest without probable cause and suppression of the confession obtained as a result of the alleged illegal arrest were fully and fairly litigated in state court, these Fourth Amendment issues are non-cognizable in a federal habeas claim.

      ii. Gang Evidence and Expert Testimony

The admissibility of evidence in a state court proceeding is primarily a matter of state law and a federal court will not review the state court rulings to determine whether the court correctly applied the law. *Stomner v. Kolb*, 903 F.2d 1123, 1128 (7th Cir. 1990). The Seventh Circuit has held that "on a petition for writ of habeas corpus, a federal court will not review evidentiary questions unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." *Moore v. Casperson*, 345 F.3d 474, 489 (7th Cir. 2003). A denial of fundamental fairness requires that the petitioner was denied judicial review, and that the outcome of the case was prejudiced as a result of the alleged error. *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994). Petitioner claims that there is a denial of fundamental fairness because the admission of gang testimony was irrelevant and highly prejudicial. Specifically, petitioner argues that general testimony of gang violence and gang wars are not relevant if not tied to the Petitioner. However, as the state appellate court noted, Petitioner admitted that he was a member of the Black P-Stones gang, and that he had a gang motive for the shooting. *People v. Davis*, 335 Ill. App. 3d 1, 16 (Ill. App. Ct. 2002). In his confession, Petitioner said his gang was "at war" with the Undertaker Vice Lords. *Id*. The state appellate court concluded that the probative value of the gang evidence outweighed the risk of unfair prejudice, as the "evidence of gang wars was particularly relevant because [Petitioner] said he

-11-

believed his armed passengers were going to shoot at rival gang members." This evidence goes to the knowledge and motive for the killing. Because the evidence went through judicial review, and is relevant in showing motive for a killing, the admission of this evidence did not deny Petitioner of a fair trial.

Petitioner further claims that it was irreversible error to allow Detective Gilger to give an expert testimony on gangs in the neighborhood and gang lifestyle, because (1) he was not qualified as an expert, and (2) the expert testimony was not necessary to understand the evidence under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (U.S. 1993). The testimony of gang activity, expert or otherwise, is probative and relevant in helping the jury understand the motive of the shooting as discussed in the above paragraph, and thus satisfying prong (2). As to whether or not Detective Gilger was a qualified expert, the proper inquiry is whether or not allowing Detective Gilger to testify as an expert witness denied Petitioner a fundamentally fair trial.

Detective Gilger had been a Chicago police officer for 12-and-a-half years at the time of his testimony, and had been a police detective in the relevant area for the past three-and-a-half years. *Davis* at 18. He was assigned to the Aggravated Battery Mission Team, and investigated homicides as well. *Id*. As a gang officer, Detective Gilger's duties were to identify known gang members in his assigned district, to suppress any kind of gang activity, identify leaders of each individual gang, and gather intelligence on gangs in the his assigned district. *Id*. Part of Detective Gilger's duties was to speak with known gang members, police officers, and other law enforcement agencies. *Id*. Detective Gilger testified that he had interviewed approximately 5,000 known gang members in his career. *Id*. The state appellate court concluded that this constituted expertise, and the method was consistent with that relied on by experts in the field of street gangs.

*Id*. The issue went through proper judicial review. Detective Gilger had professional expertise and personal knowledge of street gang activity, his testimony as an expert is appropriate and did not deny Petitioner of a fundamentally fair trial.

**D. On the Merits**

Petitioner's habeas petition must be evaluated under 28 U.S.C. § 2254, where habeas relief is warranted when the state court's adjudication of a claim "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) (1996), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2) (1996). A state court decision is contrary to Supreme Court precedent if it is inconsistent with the Supreme Court's treatment of a materially identical set of facts, or if the state court applied a legal standard that is inconsistent with the rule set forth in the relevant Supreme Court precedent. *Gilbert v. Merchant*, 2007 U.S. App. LEXIS 13371 (7th Cir. 2007). A state-court decision constitutes an unreasonable application of Supreme Court precedent within the meaning of § 2254(d)(1) when, although it identifies the correct legal rule, it applies that rule in a way that is objectively unreasonable. *Id*. A federal habeas court's own disagreement with a state court's analysis is not sufficient to meet this standard; rather, the state court's analysis must lie well outside the boundaries of permissible differences of opinion in order for the habeas court to characterize it as an unreasonable application of Supreme Court precedent. *Id*.

Petitioner claims insufficiency of evidence to prove that Petitioner was guilty beyond a reasonable doubt. For a sufficiency of evidence issue, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (U.S. 1979). In the present case, the Petitioner confessed to the crime; it was corroborated by Williams' testimony; Chris Jackson, an eyewitness, confirmed both Petitioner's and Williams' statements, and physical evidence found at the scene corroborated the accounts. *People v. Davis*, 335 Ill. App. 3d 1, 19-20 (Ill. App. Ct. 2002). With this evidence in favor of Petitioner's guilt, the Illinois Appellate Court concluded that "the State provided more than sufficient evidence from which a rational trier of fact could conclude that Derrold was proved accountable for the first-degree murder of Larion Jackson, the attempt first-degree murder of Chris Jackson, and the aggravated discharge of a firearm beyond a reasonable doubt." This conclusion is reasonable given the evidence presented and is consistent with the Supreme Court's ruling in *Jackson v. Virginia*.

## IV. CONCLUSION

For the foregoing reasons, Davis' Petition for a Writ of Habeas Corpus is DENIED. This case is closed.

Enter:
/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **June 29, 2007**